The court did not err in overruling the motion for a new trial for any of the reasons assigned.
 DECIDED FEBRUARY 3, 1948.
Ed. Hugennie was indicted for the murder of L. C. Lamb, and was convicted of voluntary manslaughter. Thereafter, he filed an amended motion for a new trial, which was overruled, and on this judgment he assigns error.
The evidence for the State, briefly but substantially, shows that the mother-in-law of the defendant lived in a little community in Hawkinsville known as "Devil's Head." In this community were located several negro houses in close proximity to each other. The defendant did not live in this community. The deceased, at the time of the homicide, was staying with his mother-in-law in one of these houses not far distant from that occupied by the mother-in-law of the defendant. On the day of the homicide the deceased worked at a sawmill until about noon. After he returned from the sawmill, he was employed by one Willie Gene Boston to assist in cutting and hauling wood. The woodpile was located back of the community houses. The wood business was owned by Willie Gene Boston. Boston and the deceased began cutting the boards into wood preparatory to delivery. They continued to work until approximately 3:30 cutting wood. At this time the defendant came from his store, *Page 437 
located in another part of the city, and stood near a tree. He called to Boston and the deceased to know if they wanted a drink. They thanked him and said "No." The defendant left and was gone about ten or fifteen minutes. He returned to the little community and to within ten or fifteen steps from where Boston and the deceased were at work. At the time Boston was working on his truck and the deceased was standing near him. The defendant was seen to have stealthily slipped along the back of the house, along the hedge, and when he got within shooting distance, without any warning whatsoever, he shot the deceased with a single-barrel shotgun, hitting him in the left side of the head, inflicting a wound which caused death almost instantly. The defendant was then seen to return to his truck near the houses, empty some liquor from a bottle, break the bottle against an object, and exclaim "Where is Alberta [this being the name of his wife]?" He then unloaded his gun, entered his truck, and drove away. In this connection, the State contends that the jury had a right to infer that the defendant had not seen his wife in the room where he stated she was.
The State introduced a number of witnesses who gave evidence from which the jury were authorized to infer that the deceased did not enter the house occupied by the defendant's mother-in-law (the defendant claiming that when he first went to the little community he went into his mother-in-law's house and observed his wife. We will mention this phase of the case later). All of the witnesses for the State testified, and it was undisputed, that the deceased returned from his sawmill work about 12 o'clock and went almost immediately, at 12:30, to assist in the woodcutting, and none of the witnesses knew of or saw the defendant's wife at her mother's house.
The defendant, in a lengthy statement, contended that for some time prior to the homicide the deceased had been having illicit relations with the defendant's wife, and that he had two or three times warned the deceased to leave his wife alone. He further stated that on the day of the homicide the deceased passed near the defendant's place of business, around 12 o'clock, and shortly thereafter the wife of the defendant stated that she wanted to get some medicine, and that he told her to make haste since the defendant had some work to do that afternoon. The wife of the *Page 438 
defendant left, presumably for the medicine, and at approximately 3:30 p. m. she had not returned; and before the defendant left his place of business and shortly after 12 o'clock, the deceased and one Henry Brown passed near the defendant's place where the defendant saw them in a conversation, and Brown laughed and the deceased laughed. The defendant stated that when he talked to Brown, Brown stated that he and the deceased were laughing about a remark the deceased made. The remark was to this effect: That the defendant was mad with the deceased because the deceased had stated to Brown that he, the deceased, was having illicit intercourse with the wife of the deceased. The defendant stated that he then went to the house of his mother-in-law, and that as he went into a room the wife of the defendant was lying on a bed in her day clothes. He then inquired of his wife as to why she was there. He contends in his statement that he saw the deceased leaving the room. He asked his wife why she had not gotten the medicine and returned. She said that she was sleepy. The defendant stated that he then left and returned with his shotgun and shot the deceased to prevent any further illicit relations with his wife; that he felt sure that, if he left his wife there and the deceased at the woodyard, they would have illicit intercourse.
The witness, Henry Brown, corroborated the defendant to the extent that he told the defendant the remarks which the deceased had made to the witness concerning the wife of the defendant. As above stated, all the witnesses for the State testified that, at both times when the defendant was at the house of his mother-in-law where he claimed that his wife was on the day of the homicide, the deceased was assisting Boston in cutting wood and did not leave there to go any other place before he was killed by the defendant.
1. So far as the general grounds are concerned, the evidence warrants the verdict of voluntary manslaughter under a sudden heat of passion supposed to be irresistible. This was a jury question properly presented by the court in its charge to the jury. There is no assignment of error that the court did not fully and correctly charge every principle of law applicable *Page 439 
to this sort of a case and defense. This is true, since there is no assignment of error on any improper charge or failure to charge. Indeed, the charge is not made a part of the record. Counsel for the defendant cite only one case for our consideration on the contention that the evidence does not sustain the verdict, and that is Miller v. State, 9 Ga. App. 599
(71 S.E. 1021). A casual reading of that case, as compared with the facts of the instant case, will readily disclose that they are different by facts and assignment of error from those of the instant case.
The court did not err in overruling the motion for a new trial so far as the general grounds are concerned.
2. There are two special grounds: 1. The defendant introduced the chief of police and asked him the question: "Did Ed Hugennie ever come to you on one or more occasions while you were chief of police, asking the help of the officers to stop this boy that he shot from running around with his wife, Ed Hugennie's wife, and having adulterous relations with her?" The court ruled that such evidence was self-serving and inadmissible and refused to allow the witness to answer such question. 2. A similar assignment of error is made in special ground 2, in that two other police officers of the City of Hawkinsville were propounded like questions as in special ground 1, and the court made the same ruling. The defendant cites no authority to sustain his position that the refusal to admit this testimony was reversible error. In our opinion the ruling of the court was correct, and there is no reversible error in this special assignment. Teasley v.State, 202 Ga. 316 (43 S.E.2d 319).
The court did not err in overruling the motion for a new trial for any of the reasons assigned.
Judgment affirmed. MacIntyre, P. J., and Townsend, J.concur.